NOT DESIGNATED FOR PUBLICATION

No. 126,482

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN T. PRICE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed November 8, 2024. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN AND HILL, JJ.

PER CURIAM: After a spell of throwing bricks at passing cars, John T. Price was charged and convicted of several counts of aggravated assault and criminal damage to property. In this direct appeal, he claims two reversible errors. First, Price argues that the prosecutor's comment at the end of closing arguments was reversible because the prosecutor expressed to the jury his opinion that Price was guilty. Second, Price argues that the trial court failed to instruct the jury on the lesser included offense of simple assault on each of his aggravated assault charges. Our review of the record reveals no reversible errors. Thus, we affirm.

1

*For reasons that are unknown in the record, Price starts throwing bricks.*

In September 2021, John Price stood in the middle of the street in Lawrence, Kansas, and threw bricks at cars that passed by. Unsurprisingly, this conduct led to criminal charges. Price was tried on eight charges—five counts of aggravated assault, severity level 7 person felonies, and three counts of criminal damage to property, class B nonperson misdemeanors. We report the details of the various episodes to provide a factual context for understanding the arguments about the summation remarks made by State's counsel as well as the issue on the claimed instruction errors.

*Price throws a brick at Jillian Buckley's car, damaging the windshield.*

Jillian Buckley and Isabella Sanchez were driving when a man in the street jumped in front of their car. Buckley hit the brakes and honked her horn, and the man threw a rock at her windshield, which cracked it. Buckley testified that she initially felt concerned about getting out of there so she sped away as quickly as possible, but then elaborated that her next immediate concern was that the rock could have hurt her. Sanchez testified that she was mostly just shocked but that both were safe and there was no immediate harm to them and the car was still functioning.

Once home, Buckley called her parents to tell them what happened and then called the police. The windshield of Buckley's car suffered around $300 in damage. Sanchez testified that she was not afraid for her safety, but on direct examination, Buckley testified that she was afraid that the rock would hit her.

The jury convicted Price of criminal damage to property based on the damage to Buckley's vehicle but found him not guilty for aggravated assault of Buckley. The aggravated assault of Sanchez charge was dismissed before the case was submitted to the jury.

2

*Price throws a brick at Tara Walker's car, damaging the front driver's side window.*

While driving to the laundromat, Tara Walker and Britany Robb saw a man in the middle of the street. Walker slowed down because she did not want to hit the man, but as she slowed, the man ran to her car and threw a brick at her window. Walker testified that she was scared because she feared the brick would break through the window and hit her head. Walker pulled into a nearby parking lot and called a police officer while she and Robb watched the man continue to throw "pieces of cement or kind of whatever he could find" at other cars in the street and noticed a brick in the middle of the street. Walker suffered around $300 in damage to her car window.

The jury found Price guilty of criminal damage to property to Walker but found him not guilty for aggravated assault of Robb.

*Price throws a brick at Lacey Gregory's car, damaging the hood and fender.*

On that same night, Lacy Gregory was driving in Lawrence when a man came into the street and threw a brick at her car. Gregory testified that she saw the man—whom she identified as Price at trial—throw the brick at her car. She said she was upset because she had just bought the car, and it was now damaged; she also felt that her life was threatened the moment that Price threw the brick at her car. The damage to her car totaled about $4,000.

The jury found Price guilty of aggravated assault of Gregory and criminal damage to Gregory's property.

*Price throws a brick at Maddie Mae Brister's car, damaging the front of her car.*

While driving home from her birthday party at Texas Roadhouse, Maddie Mae Brister noticed a man lying in the middle of the road. Brister turned left and attempted to avoid hitting the man, but as she drove past him, he stood up and threw a brick at her car. Brister threw her hands over her face—fearing for her own safety—as the man threw the brick at the driver's side of her car. Her car suffered around $4,000 in damage.

The jury found Price guilty of aggravated assault of Brister.

*The State's closing argument was given in two parts.*

Due to the claims made by Price, we offer the comment he complains about and its context in the State's closing remarks. The State began its closing argument by reiterating the instructions, telling the jury that statements of counsel are not evidence. The State emphasized this instruction and stated,

> "So everything that I say to you right now, not evidence. Everything Ms. Foster said to you today, not evidence. And everything that Ms. Caprice is gonna say to you is not evidence. The evidence that you can consider are the exhibits that were admitted; the three bodycam videos and the photos…and what people testified to from that stand.
> So it doesn't matter what spin I put on things. If somebody didn't say it, it's not evidence. And I want you all to think about that when you go into deliberations. What was actually said from the witness stand? What did these people who came in here today testify to? Because that's what's important. That's what you need to consider."

Then, the State went through the testimony as it related to the elements of the aggravated assault charges. After summarizing the testimony given during the trial, the State submitted to the jury that it was reasonable for the victims to be in fear when Price threw the bricks at their cars.

4

"So they're in fear. And that fear is, I'd submit to you, very reasonable. Is it reasonable to be in fear when something hits your car so hard that it shatters your windshield? That's for you all to decide.

The next question you ask yourselves is imminent bodily harm or immediate bodily harm. So, were they in fear that they were actually going to suffer immediate bodily harm? And I'd submit to you that each of them were. There's a reason that Jillian Buckley sped away."

Next, on the deadly weapon element of aggravated assault, the State argued that it was not suggesting to the jury that Price used the brick to cause death, "but the State would submit to you that this was calculated to produce serious bodily injury. That if somebody is struck with a large brick paver, thrown at full speed, that you could suffer a serious bodily injury." The State submitted to the jury that the portion of the aggravated assault element instruction that states that "an object can be a deadly weapon if the user intends to convince a person that it is a deadly weapon and that the person reasonably believed it to be a deadly weapon," was irrelevant. Then the State posed the question: "Did the defendant, Mr. Price, pick up a brick and use it in a manner calculated to cause serious bodily injury? And again, I'd submit to you that it is."

The State also argued that Price placed the victims in reasonable apprehension of immediate bodily harm by throwing something at the victims' cars that damaged their vehicles and could have caused serious bodily harm. The State submitted to the jury that the facts recited above is enough. That these victims "didn't have to know it was a brick ahead of time for them to be placed in fear and for them to satisfy the elements."

For the last part of the aggravated assault charge—that Price knowingly placed the victims in reasonable apprehension of harm—the State argued,

"So, I'd submit to you [Price] knew what he was doing. He knew that throwing bricks at people's cars, at their front windshield, at their driver's side windows wasn't going to elicit a great response. Nobody was gonna stop and give him a hug. So, I'd

5

submit to you he knew exactly what he was doing. He knew that by throwing these things at people that his conduct was reasonably certain to place people in fear."

Concluding the first part of its closing argument, the State argued,

"And so, ladies and gentlemen, if you go look back at the testimony, look at your notes, think back about what each of these people said, okay? Don't listen to me. Don't take it from me. Take it from them. Don't take it from [Price's lawyer]. Take it from them.

If you go back and listen to what they said. If you watch the videos, you just look at these photos, I think all of this would support a conviction on each of the charges. I appreciate your time. Thank you."

Then, at the end of its argument on rebuttal, the State concluded,

"Ladies and gentlemen, go back and talk amongst yourselves. Look at your notes. You can ask for readbacks. But I think the evidence here is all gonna point you to a verdict of guilty on all counts. Thank you."

*Does the prosecutor's statement compel reversal?*

Price argues that the during closing arguments the prosecutor erred by offering to the jury an opinion on Price's guilt. He focuses his complaint on the very last words offered in rebuttal. He claims as prosecutorial error:   "Ladies and gentlemen, go back and talk amongst yourselves. Look at your notes. You can ask for readbacks. But *I think* the evidence here is all gonna point you to a verdict of guilty on all counts. Thank you." (Emphasis added.) Reviewing courts must analyze possible prosecutorial error claims in context, not in isolation. *State v. Charles*, 304 Kan. 158, 174, 372 P.3d 1109 (2016).

Claims of prosecutorial error receive a two-part analysis. First, the reviewing court must determine whether a prosecutor's comments fall "outside the wide latitude afforded

6

to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial." *State v. Chandler*, 307 Kan. 657, Syl. ⁋ 6, 414 P.3d 713 (2018). Then, if the comments fall outside the permissible scope, the court must evaluate whether those comments prejudiced the defendant's right to a fair trial. 307 Kan. at 679. In other words, is there any error and, if so, is there prejudice to the accused resulting from that error?

There are some overarching constitutional considerations that come into play here. Guiding a prosecutorial error analysis is the constitutional harmlessness inquiry announced by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Using that lens, the reviewing court will reverse instances of prosecutorial error unless the State proves "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

The State argues in its brief, that the prosecutor's comment was not an expression of the prosecutor's personal opinion of Price's guilt but was instead a directional comment stating that the evidence would establish Price's guilt. This argument is persuasive. Prosecutors may argue that the evidence demonstrates a defendant's guilt. *State v. Peppers*, 294 Kan. 377, 399, 276 P.3d 148 (2012).

In context, the prosecutor's statement here is a statement that the evidence pointed to a verdict of guilty on all counts. See *State v. Fraire* where the court found no error in the prosecutor's remark that "it is a good case," as the comment "followed an extensive recital of the evidence," and therefore satisfied the "requirement that the prosecutor 'say something akin to "the evidence shows defendant's guilt."'" 312 Kan. 786, 793, 481 P.3d 129 (2021). See also *Peppers* where the court stated that it is necessary; however, for a

7

prosecutor to say something akin to "the evidence shows defendant's guilt" in order to make a statement merely directional and not an expression of the prosecutor's personal opinion. 294 Kan. at 400. Here the prosecutor stated, "I think the evidence is gonna point you . . ." Clearly that is a reference to the evidence and not solely an expression of personal opinion.

Together with the context of the prosecutor's comment, the evidence of Price's guilt was overwhelming. The witnesses repeatedly identified Price as the brick-throwing man and the jury heard the body camera footage of the arresting officer where Price admitted to throwing bricks at some cars. Therefore, we see no reasonable possibility that the prosecutor's comments, which followed an extensive recital of the evidence, contributed to the jury's verdict. There is no reversible error here.

*Is there clear error in the court's failure to give a lesser crime instruction?*

Price argues that the trial court erred by failing to sua sponte instruct the jury on the lesser included offense of simple assault. He contends that a jury instruction on simple assault would have resulted in the jury returning a different verdict. Because Price did not request this instruction at trial, we must review the issue for clear error. Under that standard, reversal results only if this court is firmly convinced that the "jury would have reached a different verdict had the unrequested instructions been given." *State v. Waldschmidt*, 318 Kan. 633, 646, 546 P.3d 716 (2024). Price fails to carry this burden. The trial court failed to instruct the jury on the lesser-included offense of simple assault, but even if the instruction had been given, the result would be the same.

The jury found Price guilty of aggravated assault of Gregory and Brister but found Price not guilty of aggravated assault of Robb and Buckley. The elements of the crimes are the same, and the same general events happened in each victim's case—Price stood in

8

the street and threw a brick at the victims' cars. Therefore, to find Price guilty on some charges, the jury necessarily had to find that the brick was a deadly weapon.

Following this logic we see that the contested element was not whether a deadly weapon was used but whether Price placed the victims in reasonable apprehension of immediate bodily harm. Testimony from the victims varied on whether they were scared of bodily harm. The jury acquitted Price on two counts of aggravated assault relating to Jillian Buckley and Britany Robb. Neither expressed fear of bodily harm.

Buckley testified that she was concerned about her safety but was mostly "concerned about just getting out of there." She later elaborated that she was concerned that the rock could have hit her or hurt her or knocked her out, or that she could have hit the man in the middle of the street or another car. Sanchez, who was in the car with Buckley, testified that she believed neither of them to be in danger and that they were safe.

Robb, a passenger in Walker's car testified that, when the brick hit the car, it was really loud and scary. She said the whole thing was a scary situation because they normally drive with their windows down and if they had on that day, the brick could have hit them. On cross-examination, Robb testified that she "was scared from the second that the brick had hit the car" but not before the brick hitting the car.

Price fails to firmly convince this court that the jury would have reached a different verdict had the instruction been given.

We will not address Price's cumulative error claim because we find no errors. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. The cumulative error rule

9

does not apply if there are no errors or only a single error. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Additionally, unpreserved jury instructional errors that are not clear errors, such as the instructional error claim made here, do not contribute to the cumulative error calculus. *Waldschmidt*, 318 Kan. at 662.

Because we find no reversible errors, we affirm Price's convictions.

Affirmed.